IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GEORGE M. RHODES, III,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>　　　　　Defendant. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 18-0678 (JBS)<br><br>**OPINION** |

APPEARANCES:

Daniel Sylvester Jones
LAW OFFICES OF HARRY J. BINDER & CHARLES E. BINDER
485 Madison Avenue, Suite 501
New York, NY 10022
　　Attorney for Plaintiff

Rachel E. Licausi
Special Assistant U.S. Attorney
Social Security Administration
Office of the General Counsel
300 Spring Garden Street
Philadelphia, PA 19123
　　Attorney for Defendant

**SIMANDLE**, District Judge:

## I.　INTRODUCTION

This matter comes before the Court pursuant to 42 U.S.C.
§ 405(g) for review of the final decision of Defendant Commissioner
of the Social Security Administration (hereinafter "Defendant")
denying the application of Plaintiff George M. Rhodes, III
(hereinafter "Plaintiff") for disability benefits under Title II
of the Social Security Act, 42 U.S.C. § 401, et seq. Plaintiff,

who suffers from lumbar disc disease, status-post lumbar fusion surgery and spinal cord implantation procedure, lumbar radiculopathy, and anxiety, was denied benefits for the period beginning on November 20, 2012, the alleged onset date of disability, to October 5, 2016, the date on which Administrative Law Judge Marguerite Toland (hereinafter "ALJ Toland" or "the ALJ") issued her written decision.

In the pending appeal, Plaintiff argues that the ALJ's decision must be reversed and remanded on numerous grounds, including that the ALJ erred by failing to properly weigh the medical evidence, specifically by giving greater weight to the non-treating physician's opinion that was based only on Plaintiff's medical record as it existed in November 2013, and by failing to properly evaluate Plaintiff's testimony at the ALJ hearing, in particular by improperly discounting Plaintiff's statements regarding his spinal conditions and by suggesting that the severity of Plaintiff's conditions are contradicted by a gap in his treatments without questioning Plaintiff about the alleged gap in treatment during the hearing.

## II.   BACKGROUND

### A.   Procedural History

Plaintiff filed his application for Social Security disability benefits on June 3, 2013, alleging a disability onset date of November 20, 2012. (Administrative Record (hereinafter

"R.") [Docket Item 7], 43.) Plaintiff's claim was denied by the Social Security Administration on November 25, 2013. (Id.) Plaintiff's claim was again denied upon reconsideration on February 28, 2014. (Id.) Plaintiff next testified before ALJ Toland at a hearing on May 24, 2016. (Id.) ALJ Toland issued her opinion on October 5, 2016, denying Plaintiff benefits. (Id. at 43-52.) On November 14, 2017, the Appeals Council denied Plaintiff's request for review. (Id. at 1-4.) This appeal timely follows.

### B. Medical History

Plaintiff has been diagnosed with lumbar disc disease, status-post lumbar fusion surgery and spinal cord implantation procedure, lumbar radiculopathy, and anxiety. (Id. at 45.) In 2002, Plaintiff had a lumbar fusion surgery and, after recurring back pain, he underwent a surgery in 2004 to remove hardware from the earlier surgery. (Id. at 244-53.)

Subsequently, at least as early as the autumn of 2012, Plaintiff began receiving treatment for severe back pain from his primary care physician, Dr. Joseph Cavallaro, D.O., (id. at 408), from his orthopedic surgeon, Dr. Steven J. Valentino, D.O., (id. at 273-88), from his pain management specialist, Dr. Youssef Josephson, D.O., (id. at 318-20), and from his neurologist, Dr. Robert A. Sammartino, D.O. (Id. at 264-71.) Due to the severity of the pain Plaintiff was experiencing, his treatment included providing Plaintiff with prescription painkillers. On October 4,

3

2012, Dr. Valentino wrote Plaintiff a prescription for Percocet.[1]

(Id. at 287.) On December 2, 2012, Dr. Josephson determined that

Percocet was insufficient to treat Plaintiff's pain, and therefore

he prescribed Cymbalta.[2] (Id. at 318-20.) After his physicians

determined that treating Plaintiff's pain with medication alone

was insufficient, Plaintiff later underwent multiple surgeries to

---

[1] Percocet is a brand name for a pharmaceutical consisting of a combination of oxycodone hydrochloride and acetaminophen. (See Dorland's Illustrated Medical Dictionary 1409 (32d ed. 2012).) At some points, the record indicates that Plaintiff was prescribed "oxycodone-acetaminophen," (see, e.g., R. at 331), which the Court interprets to be the same medication. For the ease of reading, the Court shall refer to this medication as "Percocet," though Plaintiff may have been taking a generic version of this medicine at certain points in his treatment.

[2] Cymbalta is a brand name for a pharmaceutical consisting of duloxetine hydrochloride. (See Dorland's Illustrated Medical Dictionary 457 (32d ed. 2012).) For the ease of reading, the Court shall refer to this medication as "Cymbalta," though Plaintiff may have been taking a generic version of this medicine at certain points in his treatment.

Plaintiff would later also be prescribed Neurontin. (R. at 331.) Neurontin is a brand name for certain preparations of the pharmaceutical known generically as "gabapentin," which is an anticonvulsant, used to treat partial seizures. (See Dorland's Illustrated Medical Dictionary 753, 1268 (32d ed. 2012).) At some points, the record indicates that Plaintiff was prescribed gabapentin, (see, e.g., R. at 334), which the Court interprets to be the same medication. For the ease of reading, the Court shall refer to this medication as "Neurontin," though Plaintiff may have been taking a generic version of this medicine at certain points in his treatment.

At various points in 2014 and 2015, Plaintiff was also prescribed Valium, Flexeril, and Skelaxin, all of which appear to have been provided to Plaintiff in order to relieve muscle spasms. (R. at 369-90.)

mitigate the pain caused by his various back/spine conditions, including the implantation of multiple spinal cord stimulators on December 27, 2012 and on January 17, 2013. (Id. at 293-98, 323-27.)

Initially, Plaintiff stated that the implanted spinal cord stimulators were helpful in reducing his back pain. (Id. at 310-11.) However, by the summer of 2013, Plaintiff indicated to his doctors that the pain had returned and that the spinal cord stimulator was "sputtering" and not working correctly. (Id. at 305-07, 402-11.) Dr. Cavallaro's notes from September 17, 2013 indicate that

> there were 2 broken leads [on Plaintiff's spinal cord stimulator], [Plaintiff] had it adjusted and the problem still continued, [in August 2013] it stopped working, now [Plaintiff's] pain has progressed[.] Now there are 5 broken leads and it was reprogrammed[.] He is not getting [relief.]

(Id. at 402.)

On September 30, 2013, Plaintiff met with Dr. Valentino, who noted that Plaintiff continues to complain of back pain, that the spinal cord stimulator was not fully functioning, and that Plaintiff may require another procedure to properly reinstall or replace the stimulator. (Id. at 330.) On October 14, 2013, Plaintiff returned to see Dr. Cavallaro, and he reported that he was still experiencing back and leg pain, that the spinal cord stimulator was not functioning properly; Dr. Cavallaro also noted

that Plaintiff exhibited a decreased range of motion and weakness in his legs. (Id. at 399-401.)

In the meantime, the records in Plaintiff's case as of the fall of 2013 were evaluated by a consultant, Dr. Andrew Przybyla, M.D.,[3] on November 22, 2013. (Id. at 108-16.) Dr. Przybyla did not examine Plaintiff, nor did he mention reviewing any medical record dated after October 25, 2013. (Id. at 109.) Dr. Przybyla further noted that, by that point in time, he was aware of no opinion evidence from any source regarding disability (Id. at 114.) Dr. Przybyla's explanation for finding no disability will be addressed in more detail, below.

On November 13, 2013, Plaintiff had a consultation with Dr. Ashwini D. Sharan, M.D., a neurologist. (Id. at 351-52.) Dr. Sharan indicated that Plaintiff's spinal cord stimulator was not functioning and that it was likely that Plaintiff would have to undergo another surgery in order to place a new, stronger stimulator. (Id.) The medical record appears to indicate that Dr. Sharan later surgically placed a new stimulator with "paddle" leads,[4] (id. at 350, 359-363, 383-86), and that the new stimulator

---

[3] The Court notes that Dr. Przybyla's surname has been incorrectly rendered as "Pryzblya" by the ALJ, (see R. 50-51), and as "Pryzbla," "Pryzblya, and "Ryzblya" by Defendant's counsel. (See Def.'s Br. [Docket Item 11], ii, 17-18.)

[4] Defendant asserts that "Plaintiff's spinal cord stimulator was replaced in January 2014." (Def.'s Br. [Docket Item 11], 8.) However, in support of that assertion, Defendant cites to a

provided greater pain relief. (Id. at 350.) However, by summer of 2014, Plaintiff indicated to Dr. Cavallaro that he was still experiencing lower back, hip, and leg pain. (Id. at 379-86.)

On November 14, 2014, Dr. Cavallaro produced an opinion regarding Plaintiff's ongoing medical conditions and Plaintiff's ability to work as a result of those conditions. (Id. at 333-37.) In that opinion, Dr. Cavallaro indicated that, in addition to the new spinal cord stimulator that had been installed by Dr. Sharan, Plaintiff was still using the medications Percocet, Cymbalta, and Neurontin to manage his back pain. (Id.) Dr. Cavallaro further opined that, even with the combination of the three medications and the spinal cord stimulator, Plaintiff could not sit any more than 20 minutes at a time, could never carry more than 20 pounds, that Plaintiff's pain or other symptoms would interfere with his ability to concentrate for between one-third and two-thirds of an 8-hour workday. (Id.) In addition, Dr. Cavallaro indicated that he expected Plaintiff's medical conditions would cause Plaintiff to be absent from work more than three days per month. (Id.)

Plaintiff's complaints of back pain to Dr. Cavallaro continued through 2014, 2015, and 2016. (Id. at 364-75, 387-90.)

---

document that only references the removal of Plaintiff's old stimulator on January 21, 2014. (R. at 375-58.) There is no explicit indication that Dr. Sharan placed Plaintiff's new stimulator on this same day, though it is a reasonable inference to draw from the record.

During various portions of that time, Plaintiff was prescribed Valium, Flexeril, Skelaxin, and Baclofen, all of which appear to have been provided to Plaintiff in order to relieve muscle spasms.[5] (Id. at 364-90.) Additionally, on May 28, 2015, Dr. Cavallaro noted that Plaintiff's new spinal cord stimulator was not sufficiently controlling his back spasms and would need to be adjusted; during that visit Dr. Cavallaro also noted that Plaintiff was in need of a new pain management regime to control his lower back pain, presumably because the existing combination of medications and spinal cord stimulation was insufficient. (Id. at 372-74.)

On April 11, 2016, Plaintiff met with Dr. Cavallaro to discuss an injury to his knee caused while doing yardwork, (id. at 340-42, 366-68), and on May 18, 2016 Plaintiff returned to Dr. Cavallaro complaining of back, elbow, and shoulder pain, resulting from an alleged physical assault.[6] (Id. at 364-65.) On May 27, 2016, Plaintiff saw Dr. Andrew Medvedovsky, M.D., a neurologist specializing in pain medicine, at which time Plaintiff continued to complain of lower back pain and noted that the pain had spread

---

[5] There is some indication in the record that Plaintiff was also prescribed Valium in order to manage his anxiety, (see R. at 367), but numerous references exist in the record that at least part of the justification for prescribing Valium was to manage Plaintiff's muscle spasms. (R. at 364-90.)

[6] While it appears that these complaints did not originate from Plaintiff's underlying conditions, it is unclear from the record whether these injuries exacerbated Plaintiff's underlying conditions or whether they were only temporary conditions. (Id. at 340-42, 364-68)

to his upper back and shoulder region. (Id. at 359-63.) Dr. Medvedovsky assessed Plaintiff's "usual pain level" as 8 on a scale of 10. (Id. at 359.)

###    C.    ALJ Decision

In a written decision dated October 5, 2016, ALJ Toland determined that Plaintiff was not disabled within the meaning of the Social Security Act at any time from November 20, 2013, the alleged disability onset date, through October 5, 2016, the date of the ALJ's decision. (Id. at 43-52.)

Using the five-step sequential evaluation process, the ALJ determined at step one that Plaintiff had not engaged in any substantial gainful activity since November 20, 2013, the alleged onset date of disability. (Id. at 45.)

At step two, the ALJ found that Plaintiff had severe impairments due to lumbar disc disease, status-post lumbar fusion surgery and spinal cord implantation procedure, lumbar radiculopathy, and anxiety. (Id. at 45-46.) The ALJ determined that Plaintiff's alleged "GERD"[7] is not severe and his potential irritable bowel syndrome has never been definitively diagnosed nor treated, and therefore "is not considered a medically determinable impairment." (Id.)

---

[7] The Court interprets this to be a reference to "gastroesphageal reflux disease."

Next, at step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, meet the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. (Id. at 46.) Specifically, the ALJ found that Plaintiff's spine disorders were not severe enough to meet the requirements of Listing 1.04, because:

> Under listing 1.04 (disorders of the spine) the evidence must establish herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, or vertebral fracture resulting in compromise of a nerve root (including cauda equina) or spinal cord with evidence of nerve root compression characterized by neuroanatomic distribution of pain, limitation of motion of the spine, motor loss (muscle weakness, or atrophy with associated muscle weakness), accompanied by sensory or reflex loss; and if there is involvement of the lower back, positive straight leg raising tests (sitting and supine)... Or lumbar spinal stenosis resulting in pseudoclaudication established by findings on appropriate medically acceptable imaging, manifested by chronic non-radicular pain and weakness, and resulting in an inability to ambulate effectively (as defined under paragraph 1.00B2b.).

(Id.) Subsequently, ALJ Toland found "that the evidence of record fails to document all of these specific criteria." (Id.) With regards to Plaintiff's mental impairments, the ALJ found that they do not meet or medically equal the criteria of Listings 12.04 or 12.06, in part because Plaintiff's condition does not meet the requirements of "paragraph B" or "paragraph C." (Id. at 46-48.)

Between steps three and four, the ALJ needed to determine Plaintiff's RFC. The ALJ found that Plaintiff had the RFC to perform

> sedentary work . . . except as follows: [Plaintiff] can sit for a total of 6 hours total per 8-hour workday, but no more than 1 hour at a time, after which he would need to stand/shift positions for up to 10 minutes per hour while remaining on task. [Plaintiff] can occasionally climb ramps and stairs. [Plaintiff] can occasionally stoop. [Plaintiff] is limited to low stress work, defined as routine, unskilled, work having no fast production rate pace or strict production quotas. Finally, [Plaintiff] would be off-task 5% of the day, in addition to normal breaks, due to physical and mental symptoms.

(Id. at 48.) In determining Plaintiff's RFC, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Id.) The ALJ only gave "partial weight" to the medical opinion of Plaintiff's treating primary care physician, Dr. Cavallaro, finding his opinion "place[s] excessive reliance on [Plaintiff's] subjective allegations and is not adequately supported by the medical record as a whole." (Id. at 50.) The ALJ's Opinion summarized Dr. Cavallaro's opinion thusly:

> [Plaintiff] is limited to sitting, standing, and walking less than one hour in an eight-hour day, precluded from lifting and carrying more than 20 pounds occasionally and [Dr. Cavallaro] noted that [Plaintiff's] symptoms of pain would "frequently" interfere with his ability to maintain attention and concentration. Dr. Cavallaro further

> indicated that [Plaintiff] would require
> unscheduled breaks at unpredictable intervals
> during [the] workday, would need to alternate
> between sitting and standing positions, and
> stated that [Plaintiff] would miss work more
> than three times per month.

(Id.) The ALJ granted "significant weight" to the opinions of Defendant's non-examining medical consultant, Dr. Przybyla, who the ALJ stated found that Plaintiff "can lift and carry 10 pounds occasionally, stand and walk two hours, and sit six hours, in [an] 8-hour day, and can occasionally perform postural activities such as stooping and climbing stairs." (Id. at 50-51.) Based on the weights given to those two doctors' opinions, the ALJ found that Plaintiff had the RFC as quoted, supra.

Based on the RFC assigned by the ALJ and testimony from a vocational expert, the ALJ found, at step four, that Plaintiff was "unable to perform any past relevant work." (Id. at 51.)

Finally, at step five, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," including those of telephone information clerk (900,000 jobs nationally), charge-accounting clerk (1,200,000 jobs nationally), and addressing clerk (500,000 jobs nationally). (Id. at 51-52.) Accordingly, the ALJ found that Plaintiff was not disabled from November 20, 2012 through the date of the ALJ's opinion: October 5, 2016. (Id. at 52.)

## III. STANDARD OF REVIEW

This Court reviews the Commissioner's decision pursuant to 42 U.S.C. § 405(g). The Court's review is deferential to the Commissioner's decision, and the Court must uphold the Commissioner's factual findings where they are supported by "substantial evidence." 42 U.S.C. § 405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Cunningham v. Comm'r of Soc. Sec., 507 F. App'x 111, 114 (3d Cir. 2012). Substantial evidence is defined as "more than a mere scintilla," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 400 (1971); Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (using the same language as Richardson). Therefore, if the ALJ's findings of fact are supported by substantial evidence, the reviewing court is bound by those findings, whether or not it would have made the same determination. Fargnoli, 247 F.3d at 38. The Court may not weigh the evidence or substitute its own conclusions for those of the ALJ. Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011). Where the ALJ's decision appears to have overlooked significant medical evidence that may be probative of a finding of disability, the reviewing court may remand for consideration. Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121–22 (3d Cir. 2000) (citing Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994); Cotter v. Harris, 642 F.2d 700, 705-07 (3d Cir. 1981)).

**IV. DISCUSSION**

Plaintiff is pursuing two theories in support of his request to overturn the ALJ's decision. The Court addresses each of them in turn.

**A. Alleged Failure of the ALJ to Properly Weigh the Medical Evidence**

Plaintiff first asserts that the ALJ failed to properly weigh the medical evidence in the record. (Pl.'s Br. [Docket Item 10], 12-18.) Specifically, Plaintiff argues that the ALJ improperly gave greater weight to Defendant's non-examining, consulting physician, Dr. Przybyla, than to Plaintiff's treating physician, Dr. Cavallaro, even though Dr. Przybyla's analysis was only based on Plaintiff's medical records as they stood in September 2013, while Dr. Cavallaro treated Plaintiff for years. (Id.) Therefore, Plaintiff argues that Dr. Przybyla's opinion cannot take into account the significant changes in Plaintiff's medical condition that took place after November 2013, and that his opinion is therefore not due the "significant weight" that the ALJ gave it. (Id.)

Dr. Przybyla produced an opinion regarding Plaintiff's medical conditions and a proposed RFC on November 22, 2013, based on the medical records available through September 2013, as detailed, supra. (R. at 108-16.) In her opinion, the ALJ found that Dr. Przybyla's opinion "is based on a thorough review of the

medical record, a knowledge of Social Security's adjudicative process, and is generally consistent with the record as a whole," and therefore Dr. Przybyla's opinion "is entitled to significant weight." (Id. at 51.)

Plaintiff argues that the "significant weight" that the ALJ granted Dr. Przybyla's opinion is improper, because the Third Circuit has stated that treating physicians' opinions should typically be granted greater weight than those of a consulting physician, especially when the consulting physician's opinions are not accompanied with an examination of the claimant[8] or are based on a misunderstanding of the claimant's medical record. (Pl.'s Br. [Docket Item 10], 15 (citing Brownawell v. Comm'r of Soc. Sec., 554 F.3d 352, 357 (3d Cir. 2008); Dorf v. Bowen, 794 F.2d 896, 901–02 (3d Cir. 1986); Brewster v. Heckler, 786 F.2d 581, 585 (3d Cir. 1986).) In Brownawell, the Third Circuit stated that it "has 'consistently held that it is improper for an ALJ to credit the testimony of a consulting physician who has not examined the claimant when such testimony conflicts with testimony of the claimant's treating physician.'" Brownawell, 554 F.3d at 357 (quoting Dorf, 794 F.2d at 901).) Therefore, Plaintiff argues that it was improper for the ALJ to give greater weight to Defendant's non-examining, consulting physician, Dr. Przybyla, than to

_____

[8] It is not in dispute that Dr. Przybyla never examined Plaintiff.

Plaintiff's treating physician, Dr. Cavallaro. (Pl.'s Br. [Docket Item 10], 12-17.)

Defendant responds that the ALJ's weighting of the opinions of Drs. Przybyla and Cavallaro was permissible because: an ALJ is not required to accept a treating physician's opinions where they are contradicted by those of a non-examining, consulting physician; the ALJ permissibly discounted Dr. Cavallaro's opinion because it contradicted Plaintiff's medical record; and Dr. Przybyla's opinion was consistent with Plaintiff's medical record. (Def.'s Br. [Docket Item 11], 13-18.)

Plaintiff's medical history, which is detailed, supra, indicates that his medical conditions have changed significantly for the worse since Dr. Przybyla reviewed Plaintiff's pre-September 2013 medical records. Specifically, since September 2013, Plaintiff has complained of a malfunctioning spinal cord stimulator, had the offending unit surgically removed and subsequently had a new spinal cord stimulator surgically implanted by Dr. Sharan. This new stimulator was effective for a time, though by the summer of 2014, Plaintiff reported that it was no longer providing substantial relief from his symptoms. Additionally, by the summer of 2014, Plaintiff's lower back pain had spread to his hips and legs. By 2016, the pain had continued to spread to Plaintiff's upper back and shoulders. This indicates that, contrary to the ALJ's opinion, Dr. Przybyla's opinion is not "based

on a thorough review of the medical record," but rather it is based
only on a review of the medical record as it stood in September
2013, over three years prior to the ALJ hearing, and that such
opinion fails to consider the significant changes that took place
in Plaintiff's medical conditions in the intervening years.
Meanwhile, Dr. Cavallaro's treatment and documentation of
Plaintiff's conditions continued.

Additionally, Plaintiff argues that the ALJ improperly
discounted Dr. Cavallaro's opinion of November 2014, by stating
that such opinions were primarily based on Plaintiff's subjective
complaints. (Pl.'s Br. [Docket Item 10], 13-14.) Plaintiff
contends that the record is clear that Dr. Cavallaro's opinions
were based on clinical examinations and medical imagery. (Id.)
Plaintiff also argues that the ALJ's statement that Dr. Cavallaro's
opinion is in contradiction with evidence that Plaintiff's
condition improved after the implantation of the spinal cord
stimulator inappropriately focuses on a brief period of
improvement rather than on the record as a whole, as Plaintiff's
pain inevitably recurred. (Id.)

Defendant responds that the ALJ correctly discounted Dr.
Cavallaro's opinion, because it is not supported by Plaintiff's
medical record. (Def.'s Br. [Docket Item 11], 15.) In making this
assertion, Defendant relies upon "physical examination findings in
the record" that Defendant contends "do not correlate to the degree

of severity suggested by Dr. Cavallaro's opinion." (<u>Id.</u>) Specifically, Defendant argues that "Plaintiff's deep tendon reflexes were intact and his motor and sensory examinations, gait, station, coordination, muscle strength, and tone were normal." (<u>Id.</u> (citing R. at 266, 273, 275, 278, 280, 283, 299, 300).) However, in discounting Dr. Cavallaro's opinion, the ALJ does not reference any of these factors, but it only appears to reference records showing that Plaintiff experienced pain relief after implantation of a spinal cord stimulator.[9] (R. at 50.) The Court is only permitted to consider the ALJ's decision based on the rationale contained in that decision; the Court is not to consider hypothetical rationales, which may justify the ALJ's decision, but which were not in fact underlying the opinion in question. <u>See Sec. & Exch. Comm'n v. Chenery Corp.</u>, 332 U.S. 194, 204 (1947). Therefore, the Court shall disregard this argument.[10]

---

[9] The Court notes that this portion of the ALJ's opinion only appears to reference the installation of a single spinal cord stimulator, while the record clearly indicates that Plaintiff has had at least three separate devices installed, as described, <u>supra</u>.

[10] Defendant also cites to portions of the record indicating that Plaintiff is able to engage in some everyday activities that require some amount of physical exertion, such as feeding his daughter, taking out the trash, and gardening. (Def.'s Br. [Docket Item 11], 17.) The ALJ does not note any of these examples in supporting her decision to only grant partial weight to Dr. Cavallaro's opinion, (<u>see</u> R. at 50), therefore the Court shall disregard this argument as well. <u>See</u> <u>Chenery</u>, 332 U.S. at 204. The Court also notes that the record is not clear as to the frequency or intensity with which Plaintiff has engaged in these activities; therefore, the Court expresses no opinion as to whether Plaintiff's

The only specific rationale that the ALJ provides for discounting Dr. Cavallaro's opinion is that Plaintiff "experienced significant pain-relief following his spinal cord implantation procedure." (R. at 50.) As noted, supra, the ALJ only seems to acknowledge one of Plaintiff's three spinal cord stimulator implantation procedures, though it is unclear from the ALJ's opinion to which of these procedures she is referring. (Id.) Furthermore, the ALJ's opinion does not acknowledge, and perhaps inadvertently overlooks, that while the record does show that Plaintiff's pain has been significantly reduced after each of his spinal cord stimulators was implanted, the record, as described supra, also shows that Plaintiff's symptoms returned in each instance only a few months later. Indeed, the record appears to show that Plaintiff's pain has also expanded to new regions, including his hips, legs, upper back, and shoulders.

The Court finds that the ALJ's substantial reliance upon Dr. Przybyla's opinion over Dr. Cavallaro's opinion indicates that the ALJ may have overlooked or inadvertently given lesser weight to the significant changes in Plaintiff's medical condition, the necessity of multiple invasive procedures in the attempts to alleviate his pain, and the need for numerous, strong medications for partial pain relief during this time, as documented in the

---

ability to engage in these activities contradicts or calls into question Dr. Cavallaro's opinions regarding Plaintiff's abilities.

record, that took place after Dr. Przybyla's opinion was written. Specifically, Dr. Przybyla's opinion does not take into account that Plaintiff's spinal cord stimulator was replaced and that such replacement is still not reliably reducing Plaintiff's back pain. Additionally, Dr. Przybyla's opinion does not take into account that Plaintiff's lower back pain has subsequently spread to Plaintiff's hips, legs, upper back, and shoulders.

Therefore, the Court finds that the ALJ's RFC determination did not give sufficient consideration to the records and opinions from Plaintiff's treating physicians, nor does it sufficiently account for the well-documented changes in Plaintiff's condition over the course of the alleged period of disability: November 20, 2012 through the date of the ALJ's decision. Accordingly, the ALJ's decision shall be remanded for further consideration.

### B.   Alleged Failure of the ALJ to Properly Evaluate Plaintiff's Testimony

Plaintiff further alleges that the ALJ erred in discounting Plaintiff's testimony at the ALJ hearing regarding his conditions and symptoms. (Pl.'s Br. [Docket Item 10], 18-21.) As a part of this critique, Plaintiff asserts that the ALJ improperly suggested that Plaintiff's testimony regarding the severity of his conditions was undermined by gaps in his treatment record, without questioning Plaintiff about the reason for those gaps during his testimony at the ALJ hearing. (Id. at 20-21.)

As the Court will remand this case for the reasons stated, _supra_, the parties will have the opportunity to address these alleged shortcomings on remand and the Court need not address this argument at this time.

**V.     CONCLUSION**

For these reasons set forth above, the Court finds that the case should be remanded to the ALJ for further proceedings. An accompanying Order will be entered.


**March 5, 2019**                          **s/ Jerome B. Simandle**
Date                                        JEROME B. SIMANDLE
                                            U.S. District Judge